**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JASON CARPENTER,**

                          **Plaintiff,**                    **6:18-cv-1268**
                                                            **(GLS/TWD)**

          **v.**

**MOHAWK VALLEY COMMUNITY**
**COLLEGE et al.,**

                          **Defendants.**
_____

**APPEARANCES:**                        **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Ward Arcuri Law Firm                    MICHAEL A. ARCURI, ESQ.
44 Oxford Road                          KEVIN J. DWYER, ESQ.
New Hartford, NY 13413

Law Office of Zachary C. Oren, Esq.     ZACHARY C. OREN, ESQ.
401 Rutger Street
Utica, NY 13501

**FOR THE DEFENDANTS:**
Office of Frank W. Miller              CHARLES C. SPAGNOLI,
6575 Kirkville Road                    ESQ.
East Syracuse, NY 13057                FRANK W. MILLER, ESQ.

**Gary L. Sharpe**
**Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Jason Carpenter brings this action against defendants

Mohawk Valley Community College (MVCC), Kimberly Evans-Dame,

Oneida County, and Gary Broadhurst, alleging sixteen claims pursuant to

the Fair Labor Standards Act[1] (FLSA), 42 U.S.C. § 1983, the Drivers'

Privacy Protection Act[2] (DPPA), and New York state law.  (*See generally*

Am. Compl., Dkt. No. 31.)  Now pending are defendants' motions to

dismiss and/or for partial summary judgment.  (Dkt. Nos. 39, 49, 50.)  For

the reasons stated below, defendants' motions are granted in part and

denied in part.

## II.  Background

### A.    Facts[3]

MVCC, a community college and member of the National Junior

College Athletic Association (NJCAA), is sponsored and "significantly

control[led]" by Oneida County.  (Am. Compl. ¶¶ 17, 21, 34.)  Dame and

Broadhurst were employees of MVCC throughout the relevant time period.

(*Id.* ¶¶ 24, 26.)  Dame served as Executive Director of Human Resources

---

[1] *See* 29 U.S.C. §§ 201-19.

[2] *See* 18 U.S.C. §§ 2721-25

[3] Although defendants' motions are motions to dismiss and for partial summary judgment, they are primarily motions to dismiss pursuant to F.R.C.P. 12(b)(6).  (*See generally* Dkt. Nos. 39, 49, 50.)  Accordingly, the facts are drawn from Carpenter's amended complaint, (Dkt. No. 31), and presented in the light most favorable to him.

and Broadhurst served as the Associate Dean of Physical Education and Athletics.  (*Id.*)  Both Dame and Broadhurst "ha[d] the power to fire and hire employees."  (*Id.* ¶ 28.)

Carpenter was hired as the head coach of MVCC's women's basketball team in 2009.  (*Id.* ¶ 36.)  In 2010, he began to simultaneously serve as the assistant to Broadhurst.  (*Id.* ¶ 38.)  Throughout Carpenter's employment with MVCC, Dame and Broadhurst "supervise[d] and control[led] [his] work schedule, conditions of employment[,] and rate of pay," and "maintained [his] employment records."  (*Id.* ¶¶ 29-30.)

As head coach of the women's basketball team, Carpenter was tasked with recruiting; organizing and participating in practices; reviewing film; "attend[ing] all women's basketball practices, games, [and] team meetings"; scouting; "travel[ing] to and from games with the team"; "oversee[ing] all scheduling for games and practices"; and fundraising.  (*Id.* ¶ 41.)  And, as the assistant to Broadhurst, Carpenter "develop[ed] the student athletic success program"; ensured compliance with the NJCAA's "eligibility requirements[,] which included . . . ensur[ing] students maintained eligible GPAs, [and] managing study halls"; performed on-site management at "games for all sports teams"; "coordinate[d] travel and

arrange[d] for transportation for all sports teams"; filled in for Broadhurst when he was unavailable; and "implement[ed] the orders, directives[,] and directions of [Broadhurst]."  (*Id.* ¶ 40.)  All of Carpenter's actions pursuant to this role were subject to the consent and approval of Broadhurst.  (*Id.*)

Carpenter spent approximately thirty-five hours per week in his role as assistant to Broadhurst.  (*Id.*)  And, during the basketball seasons, he spent at least the same amount of time performing his coaching duties. (*Id.* ¶ 42.)  Carpenter was paid approximately $34,000 for his work as assistant, and was paid a stipend of between $9,000 and $12,000 each basketball season for his coaching job.  (*Id.* ¶¶ 37, 48-49.)  At the end of the 2016-17 basketball season, "MVCC paid to the assistant women's basketball coaches[] retroactive overtime pay."  (*Id.* ¶ 53.)  From February 2017 through February 2018, Carpenter was paid an additional sum of $81,541.23 as compensation for his coaching job.  (*Id.* ¶ 55.)  Prior to this, Carpenter was not offered, or paid, the overtime pay he earned while performing this job.  (*Id.* ¶ 56.)

Carpenter had success as the head coach of MVCC's women's basketball team, reaching the national semi-finals in five seasons from 2010 through 2017.  (*Id.* ¶ 52.)  Additionally, before the 2017-18 season

4

was cancelled for reasons explained below, the team was ranked third in the country and was expected to qualify for the national semi-finals again. (*Id.* ¶ 65.)

As part of Carpenter's employment agreement with MVCC for his assistant job, he was subject to a Collective Bargaining Agreement (CBA) between MVCC and the MVCC Professional Association (hereinafter "the Association"). (*Id.* ¶ 44.) Carpenter was a dues-paying member of the Association. (*Id.* ¶ 47.) Pursuant to the CBA, MVCC "was required to take certain steps and follow certain procedures before terminating an employee." (*Id.* ¶ 46.)

At some point during the 2017-18 basketball season, Dame received information from an anonymous source that Carpenter "made an improper loan to one or more student-athletes . . . in violation of NJCAA rules[,] and that [he] was not respecting proper 'boundaries'" with the athletes. (*Id.* ¶ 57.) Dame knew that the anonymous source was Carpenter's ex-wife with whom he was going through a "contentious divorce." (*Id.* ¶¶ 57, 84.)

Dame directed Broadhurst to self-report the loan violation to the NJCAA, and to include in that report that Carpenter would be terminated as a result. (*Id.* ¶¶ 60-61.) This direction was made "without doing interviews

with the necessary parties, without requesting and reviewing relevant documents available to her through MVCC[,] and without conducting a proper investigation . . . or substantiation of the allegations."  (*Id.* ¶ 62.) Carpenter alleges that Dame has a "history of performing gender biased internal administrative investigations resulting [in] terminations . . . and . . . in female replacement hires."  (*Id.* ¶ 63.)

On February 28, 2018, Carpenter was served with a notice of termination, signed by Dame, which advised Carpenter that he was terminated for violations of the NJCAA bylaws, and because he "acted inappropriately with the student-athletes."  (*Id.* ¶ 66.)  Carpenter met with Dame on March 13, 2018, at which time she explained that this notice was actually a notice of charge, and he had not yet been terminated at that time.  (*Id.* ¶¶ 102-04.)

**B.**   **Procedural History**

Carpenter commenced this action in New York State Supreme Court in Oneida County on September 26, 2018.  (Compl., Dkt. No. 2.) Defendants removed the action to this court on the basis of federal question and supplemental jurisdiction, (Dkt. No. 1), and then moved to dismiss and for summary judgment, (Dkt. No. 11).  In response, Carpenter

cross-moved for leave to amend.  (Dkt. No. 19.)  The court denied

defendants' motion and granted Carpenter's cross-motion for leave to

amend.  (Dkt. No. 22.)

Carpenter filed the amended and operative complaint on August 1,

2019,[4] in which he alleges, sixteen causes of action.  (Am. Compl.)

Specifically, Carpenter asserts the following claims against all defendants:

an FLSA claim; a New York Labor Law (NYLL) claim; a Fourteenth

Amendment procedural due process claim pursuant to 42 U.S.C. § 1983; a

Fourteenth Amendment substantive due process claim pursuant to 42

U.S.C. § 1983; a Fourteenth Amendment equal protection claim pursuant

to 42 U.S.C. § 1983; a New York Human Rights Law[5] (NYHRL) claim; and

a DPPA claim.  (*See generally* Am. Compl.)  Additionally, Carpenter

alleges a Fourteenth Amendment stigma plus claim pursuant to 42 U.S.C.

§ 1983 and a defamation claim pursuant to New York state law against

MVCC, Dame, and Oneida County only.  (*Id.*)  Finally, Carpenter asserts a

gender discrimination claim pursuant to 42 U.S.C. § 1983 against MVCC

---

[4]  Carpenter first filed an amended complaint on July 31, 2019, (Dkt. No. 28), but he replaced it with a "corrected" version the next day on August 1, 2019, (Dkt. No. 31).

[5]  *See* N.Y. Exec. Law §§ 290-301.

7

and Oneida County only.  (*Id.*)

Motions to dismiss pursuant to F.R.C.P. 12(b)(6) and/or for partial summary judgment pursuant to F.R.C.P. 56 were subsequently filed by MVCC and Dame, (Dkt. No. 39); Broadhurst, (Dkt. No. 49); and Oneida County, (Dkt. No. 50).

### III.  Standards of Review

### A.   Motion for Partial Summary Judgment

The standard of review under Fed. R. Civ. P. 56 is well settled and will not be repeated here.  For a full discussion of the governing standard, the court refers the parties to its prior decision in *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v. Sprague*, 489 F. App'x 500 (2d Cir. 2012).

### B.   Motion to Dismiss

The standard of review under Fed. R. Civ. P. 12(b)(6) is well settled and will not be repeated here.  For a full discussion of the governing standard, the court refers the parties to its prior decision in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010).

### IV.  Discussion

### A.   Motions for Partial Summary Judgment

Defendants move for partial summary judgment only as to Carpenter's FLSA and NYLL claims.  (Dkt. No. 39, Attach. 5 at 6-11; Dkt. No. 49, Attach. 5 at 6-11; Dkt. No. 50, Attach. 5 at 4-9.)  Carpenter brings these claims against all defendants, alleging that they violated the FLSA and the NYLL by failing to pay him overtime from September 26, 2015 through January 2017.  (Am. Compl. ¶¶ 123-57.)

*1.   Need for Discovery*

Summary judgment should only be granted if "*after discovery*, the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 303 (2d Cir. 2003) (citation omitted).

Although F.R.C.P. 56 "allows a party to move for summary judgment before discovery is complete, such a motion is successful '[o]nly in the rarest of cases' because '[t]he nonmoving party must have had the opportunity to discover information that is essential to [its] opposition to the motion for summary judgment.'"  *Great Wall De Venez. C.A. v. Interaudi Bank*, 117 F. Supp. 3d 474, 492-93 (S.D.N.Y. 2015) (quoting *Hellstrom v. U.S. Dep't of Veteran Affairs*, 201 F.3d 94, 97 (2d Cir. 2000)).  However,

"an opposing party's mere hope that further evidence may develop prior to trial is an insufficient basis upon which to justify the denial of [a summary judgment] motion." *Gray v. Town of Darien*, 927 F.2d 69, 74 (2d Cir. 1991) (citations omitted).  "[W]here it is clear that the nonmoving party cannot defeat the motion by showing facts sufficient to require a trial for resolution, summary judgment may be granted notwithstanding the absence of discovery." *Nelson v. Deming*, 140 F. Supp. 3d 248, 257 (W.D.N.Y. 2015) (citation omitted).

Here, as of the date Carpenter filed his opposition to defendants' motions for summary judgment, no discovery has been conducted.  (Dkt. No. 52, Attach. 2 at 2.)  In fact, after defendants filed their motions, the Rule 16 conference was adjourned without a date.  (Dkt. No. 46.)  Without the benefit of even the most basic discovery, Carpenter could be at a disadvantage in his ability to properly respond to a motion for summary judgment.  However, Carpenter did not offer a single reason, in his opposition briefs or otherwise, for why discovery is necessary to defeat defendants' motions for partial summary judgment.  (Dkt. No. 52, Attach. 2 at 7; Dkt. No. 55, Attach. 2 at 7; Dkt. No. 56, Attach. 2 at 7.)  Instead, Carpenter's requests for discovery are entirely related to defendants'

12(b)(6) arguments.  (*Id.*)

Accordingly, Carpenter has not met his burden of showing that, "for specified reasons, it cannot present facts essential to justify its opposition," *see Phelps v. Brighter Choice Found., Inc.*, No. 1:12-CV-1494, 2013 WL 5354526, at *1 (N.D.N.Y. Sept. 24, 2013), and the court will reach the merits of defendants' motions for partial summary judgment.

### 2.   FLSA/NYLL Claims, Generally

The FLSA requires employers to pay certain employees overtime. *See* 29 U.S.C. §§ 203, 207, 213.  Some employees "are exempt from the FLSA's overtime requirements, however, including those employed in [] 'a bona fide . . . administrative[] or professional capacity.'" *Paganas v. Total Maint. Sol., LLC*, 726 F. App'x 851, 853 (2d Cir. 2018) (quoting 29 U.S.C. § 213(a)(1)). "[B]ecause the FLSA is a remedial act, its exemptions . . . are to be narrowly construed, and the burden rests on the employer to prove that a particular employee is exempt from the Act's requirements." *Id.* (internal quotation marks and citation omitted).  The NYLL "mandates overtime pay and applies the same exemptions as the FLSA." *Ramos v. Baldor Specialty Foods. Inc.*, 687 F.3d 554, 556 n.1 (2d. Cir. 2012).

### 3.   FLSA Claim as to Carpenter's Coaching Job

Defendants argue that the professional exemption applies to Carpenter's FLSA claim with respect to his coaching job.  (Dkt. No. 39, Attach. 5 at 7-8; Dkt. No. 49, Attach. 5 at 7-8; Dkt. No. 50, Attach. 5 at 6.)  The FLSA's professional exemption applies to employees (1) who earn a salary of at least $684 per week and (2) whose "primary duty is the performance of work: (i) [r]equiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction; or (ii) [r]equiring invention, imagination, originality or talent in a recognized field of artistic or creative endeavor."  29 C.F.R. § 541.300(a).

Defendants' argue that Carpenter falls under the professional exemption with respect to his coaching job, because "his duties . . . drew on the instruction he received in his Master's in Sports Science program, . . . required the consistent exercise of discretion and judgment on his part, and . . . were varied in character and predominantly intellectual in nature." (Dkt. No. 39, Attach. 5 at 7-8; Dkt. No. 49, Attach. 5 at 7-8; Dkt. No. 50, Attach. 5 at 5-6.)  Further, defendants argue that this exemption applies, because Carpenter's salary was greater than $455 per week.  (*Id.*)

However, the salary of an employee must be $684 per week or

greater in order for this exemption to apply; not $455 as defendants

suggest.  *See* 29 C.F.R. § 541.300(a)(1) ("The term 'employee employed in

a bona fide professional capacity' . . . shall mean any employee:

(1) [c]ompensated on a salary or fee basis . . . at a rate of not less than

$684 per week (or $455 per week if employed in the Commonwealth of the

Northern Mariana Islands, Guam, Puerto Rico, or the U.S. Virgin Islands.").

Here, using the numbers provided by defendants ($12,000 for a twenty-six

week period), (Dkt. No. 39, Attach. 5 at 7-8; Dkt. No. 49, Attach. 5 at 7-8;

Dkt. No. 50, Attach. 5 at 5-6), Carpenter earned just under $462 per week

for his coaching job.

Moreover, defendants' argument that the professional exemption

applies because Carpenter had a Masters degree in Sports Science, and

that Carpenter used what he learned in that program to perform his

coaching duties, (*id.*), is unpersuasive.  "If a job does *not* require

knowledge customarily acquired by an advanced educational degree . . .

then, regardless of the duties performed, the employee is not an exempt

professional under the FLSA."  *Young v. Cooper Cameron Corp.*, 586 F.3d

201, 206 (2d Cir. 2009).

Logically speaking, coaching a college basketball team does not

appear to be the kind of job that requires knowledge customarily acquired

by an advanced education degree.  Accordingly, defendants have not met

their burden on summary judgment to show that there is no issue of

material fact as to whether Carpenter's coaching position meets the criteria

for the FLSA's professional exemption, and their motions for partial

summary judgment as to this claim are denied with leave to renew.

    *4.*    *NYLL Claim as to Carpenter's Coaching Job*

       Defendants argue that the NYLL's professional exemption applies to

Carpenter's coaching job as well based on the same reasons as stated

above.  (Dkt. No. 39, Attach. 5 at 6-7; Dkt. No. 49, Attach. 5 at 6-7; Dkt.

No. 50, Attach. 5 at 4-6.)  Under the NYLL, the "professional employee

exemption[] [is] substantially similar to the exemption[] under the FLSA."

*Sethi v. Narod*, 974 F. Supp. 2d 162, 184 (E.D.N.Y. 2013) (citing 12

N.Y.C.R.R. § 142-2.14(c)(4)(ii), (iii)).  Indeed, although there is no salary

requirement for the NYLL's professional exemption, "the NYLL's duty

requirement for professional employees is nearly identical to that of the

FLSA, requiring that an exempt individual's primary duty consist of work

'requiring knowledge of an advanced type in a field of science or learning

customarily acquired by a prolonged course of specialized intellectual

instruction and study.'"  *Id.* at 185 (quoting 12 N.Y.C.R.R. § 142-2.14(c)(4)(iii)).

As discussed above, Carpenter's coaching job did not appear to require knowledge customarily acquired over a prolonged course of specialized intellectual instruction and study, and thus Carpenter does not appear to be an exempt professional under the NYLL.  Accordingly, defendants have not met their burden on summary judgment to show that there is no issue of material fact as to whether Carpenter's coaching position meets the criteria for the NYLL's professional exemption, and their motions for partial summary judgment as to this claim are denied with leave to renew.

    *5.    FLSA Claim as to Carpenter's Assistant Job*

Defendants argue that Carpenter's assistant job falls under the FLSA's professional and administrative exemptions.  (Dkt. No. 39, Attach. 5 at 10-11; Dkt. No. 49, Attach. 5 at 10-11; Dkt. No. 50, Attach. 5 at 8-9.) Carpenter's assistant job does not appear to fall under the FLSA's or the NYLL's professional exemption, because, like his coaching job, his assistant job does not appear to require knowledge customarily acquired over a prolonged course of specialized intellectual instruction and study.

*See Young*, 586 F.3d at 206.

Next, the administrative exemption applies to employees (1) who earn a salary of at least $684 per week; (2) "[w]hose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers"; and (3) "[w]hose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance."  29 C.F.R. § 541.200(a).

Defendants argue that Carpenter's assistant job falls under this exemption, because his duties in that role included "developing the student athletic success program," ensuring compliance with the NJCAA eligibility requirements, "site management on game days," and coordinating travel and scheduling for all of MVCC's athletic programs.  (Dkt. No. 39, Attach. 5 at 11; Dkt. No. 49, Attach. 5 at 11; Dkt. No. 50, Attach. 5 at 9.)  In addition, Carpenter earned an annual salary of $34,180.00, equivalent to about $794.88 per week.  (*Id.*)  Carpenter argues that the administrative exemption does not apply to his assistant job, because he did not have final decision-making authority, and his duties were primarily secretarial in nature.  (Dkt. No. 52, Attach. 2 at 6; Dkt. No. 55, Attach. 2 at 6; Dkt. No.

56, Attach. 2 at 6.)

"An executive assistant or administrative assistant to a business owner or senior executive of a large business generally meets the duties requirements for the administrative exemption if such employee, without specific instructions or prescribed procedures, has been delegated authority regarding matters of significance." 29 C.F.R. § 541.203(d). "The term 'matters of significance' refers to the level of importance or consequence of the work performed." *Id.* § 541.202(a).

An employee's "primary duty" depends on such factors as "the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." *Id.* § 541.700(a). "The amount of time an employee spends performing exempt work, as opposed to nonexempt work, is a useful guide in determining whether exempt work is the primary duty of the employee, but time alone is not the sole test." *Dineley v. Coach, Inc.*, No. 16-CV-3197, 2017 WL 2963499, at *6 (S.D.N.Y. July 11, 2017) (internal quotation marks, alterations, and citation

omitted).

Although Carpenter's argument that his duties were secretarial is lacking in factual support,[6] and citing to allegations in a complaint is generally insufficient to defeat summary judgment, the court is mindful that he has had minimal, if any, opportunity to discover facts essential to his defense.  Accordingly, because "[t]he primary-duty determination is highly context specific and depends on all the facts in a particular case," *Ik Ho Choi v. Home & Home Corp.*, No. 17-CV-05400, 2019 WL 4193449, at *6 (E.D.N.Y. Sept. 3, 2019) (internal quotation marks and citation omitted), and because Carpenter's primary duties are in dispute, summary judgment is improper at this time and defendants' motions as to this claim are denied with leave to renew.

### 6.    NYLL Claim as to Carpenter's Assistant Job

Similar to the FLSA, in order to fall under the NYLL administrative exemption, a plaintiff must "customarily and regularly exercise[ ] discretion and independent judgment."  12 N.Y.C.R.R. § 142-2.14(c)(4)(ii)(b).  There is one additional element under the NYLL: the employee must "regularly

---

[6] "The fact that an employee's decision may be subject to review and that upon occasion the decisions are revised or reversed after review does not mean that the employee is not exercising discretion and independent judgment."  29 C.F.R. § 541.202(c).

and directly assist[ ] an employer, or an employee employed in a bona fide

executive or administrative capacity" or "perform[ ], under only general

supervision, work along specialized or technical lines requiring special

training, experience or knowledge."  *Id.* § 142-2.14(c)(4)(ii)(c).

    As discussed above, there are disputed issues of fact as to

Carpenter's primary duties as assistant to Broadhurst and whether he

exercised discretion and independent judgment sufficient to bring him

within this exemption.  Accordingly, defendants' motions for summary

judgment as to this claim are denied with leave to renew.

**B.    <u>Motions to Dismiss</u>**

    *1.    FLSA/NYLL*

    Defendants' argue that, assuming Carpenter's FLSA and NYLL

claims survive summary judgment (which, as outlined above, they do),

certain restrictions should be made as to for which time period Carpenter

can recover from these claims, and from which defendant he can recover.

(Dkt. No. 39, Attach. 5 at 12-14; Dkt. No. 49, Attach. 5 at 12-15; Dkt.

No. 50, Attach. 5 at 10-13.)  Specifically, defendants argue that Carpenter

is not entitled to recover from his FLSA claim for any period of time prior to

September 26, 2016, or from his FLSA or NYLL claims for any time after

mid-January 2017 with respect to his coaching job.  (*Id.*)  Additionally,

Oneida County argues that Carpenter's NYLL claim should be dismissed

against it because Carpenter failed to serve a timely notice of claim.  (Dkt.

No. 50, Attach. 5 at 12-13.)

First, the statute of limitations under the FLSA is generally two years,

"except that a cause of action arising out of a willful violation may be

commenced within three years after the cause of action accrued."  29

U.S.C. § 255(a).  Defendants argue that the two-year limitation should

apply because Carpenter did not sufficiently allege willfulness.  (Dkt. No.

39, Attach. 5 at 12-14; Dkt. No. 49, Attach. 5 at 12-14; Dkt. No. 50,

Attach. 5 at 10-12.)  However, "the question of whether [the] alleged

violation was 'willful' is a substantive question best reserved for a later

stage, when the parties have had an opportunity to conduct discovery and

further develop the record."  *Dieffenbauch v. Rhinehart R.R. Constr., Inc.*,

No. 8:17-CV-1180, 2018 WL 4150883, at *5 (N.D.N.Y. Aug. 30, 2018).

Accordingly, Carpenter's general allegations of willfulness is sufficient

at this time for the application of the three-year statute of limitations, and

defendants' request to dismiss Carpenter's FLSA claim for periods prior to

September 26, 2016 is denied.  *See Solis v. ZEP LLC*, No. 19-CV-4230,

20

2020 WL 1439744, at *9 (S.D.N.Y. Mar. 24, 2020) ("Whether a violation of the FLSA is willful is a fact-intensive inquiry not generally capable of being resolved on a motion to dismiss, and therefore plaintiffs may allege willfulness in general terms to avail themselves of the FLSA's three-year statute of limitations.").

However, defendants' request to limit Carpenter's FLSA and NYLL claims to periods prior to mid-January 2017 with respect to his coaching job is granted, as, although Carpenter's allegations and arguments have been fairly inconsistent on this point, Carpenter expressly admits in his response to defendants' statements of material facts that he is not entitled to recover overtime from mid-January 2017 onward.  (Dkt. No. 52, Attach. 1 at 4.)  Further, Carpenter "brings a claim . . . for lost over time from . . . September 26, 2015 *until* January 2017."  (Am. Compl. ¶ 146 (emphasis added).)

Finally, Oneida County's motion to dismiss Carpenter's NYLL claim against it is also granted.  "Under New York law, a plaintiff filing a personal injury claim against a public defendant must . . . serve a notice of claim within ninety days of the claim's accrual."  *In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 846 F.3d 58, 62 n.3 (2d Cir. 2017) (citing

21

N.Y. Gen. Mun. Law § 50-e(1)(a)).

Here, Oneida County argues that because the sole notice of claim was served by Carpenter on May 18, 2018, and Carpenter alleges that he began to receive overtime payments in early 2017, the notice of claim was untimely and the NYLL claim as against Oneida County must be dismissed. (Dkt. No. 50, Attach. 2 at 12-13.)  "It is well settled that compliance with the notice of claim requirement is a condition precedent to commencement of an action against [a] municipality and the burden is on the plaintiff to plead and prove compliance with the notice of claim requirement."  *Friel v. County of Nassau*, 947 F. Supp. 2d 239, 247 (E.D.N.Y. 2013) (citation omitted).  "This requirement is mandatory in [f]ederal [c]ourt and failure to comply results in dismissal of claims."  *Eberle v. Town of Southampton*, 985 F. Supp. 2d 344, 348 (E.D.N.Y. 2013) (citation omitted).

Here, Carpenter did not even respond to Oneida County's argument and thus clearly did not show that his failure to file a timely notice of claim should be excused.  Accordingly, Oneida County's motion to dismiss Carpenter's NYLL claim against it is granted and that claim is dismissed.

   2.   *Monell Liability*

Carpenter alleges *Monell* liability for MVCC and Oneida County for

22

his claims of procedural due process, stigma plus, equal protection, substantive due process, and Section 1983 gender discrimination.  (Am. Compl. ¶¶ 158-61, 178-80, 240-43, 247-55.)

A municipality may be liable under § 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  To establish a municipal policy or custom, a plaintiff must allege:

> (1) a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by government officials responsible for establishing municipal policies which caused the alleged violation of the plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom or usage and implies the constructive knowledge of policy-making officials; or (4) a failure by official policy-makers to properly train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact.

*Dilworth v. Goldberg*, 914 F. Supp. 2d 433, 452-53 (S.D.N.Y. 2012) (citation omitted).

In arguing that MVCC and Oneida County are liable under *Monell*, Carpenter asserts that Dame and Broadhurst were final policymakers for

23

MVCC and Oneida County.  (Am. Compl. ¶¶ 158-61, 178-80, 240-43, 247-50.)  Ordinarily, "a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [municipality]."  *Newton v. City of New York*, 566 F. Supp. 2d 256, 271 (S.D.N.Y. 2008) (citation omitted).  But "municipal liability may be imposed for a single decision by municipal policymakers."  *Nagle v. Marron*, 663 F.3d 100, 116 (2d Cir. 2011) (citation omitted).

Even at this early stage of the litigation, Carpenter's allegations, which consist of one conclusory sentence, are entirely inadequate to establish *Monell* liability based on the policymaker theory.  *See Coppola v. Town of Plattekill*, No. 1:17-CV-1032, 2018 WL 1441306, at *10 (N.D.N.Y. Mar. 22, 2018) ("[M]inimal, conclusory statements fall far short of satisfying Plaintiff's burden to allege facts creating a plausible inference that either of these defendants were final policymakers.  Plaintiff does not direct the Court to New York State law, municipal charters, or any other source that could support her claim."); *Williams v. City of New York*, 690 F. Supp. 2d 338, 345 (S.D.N.Y. 2010) ("Common sense suggests that plaintiffs' immediate superiors, Human Resources, and the union did not have the authority to formulate the rules governing personnel decisions but rather

the authority to make decisions pursuant to those rules." (internal quotation marks and citation omitted)).

Carpenter also asserts *Monell* liability under the theory that gender discrimination was a widespread municipal custom or practice. (Am. Compl.¶¶ 251-55.)  However, Carpenter "does not [sufficiently] allege the existence of . . . any practices so widespread that they practically have the force of law." *Jackson v. Westchester County*, No. 18-CV-7207, 2019 WL 3338020, at *4 (S.D.N.Y. July 25, 2019).  His allegation that MVCC was a defendant in at least one other gender discrimination action is insufficient. *See Lopes v. Westchester County*, No. 18-CV-8205, 2020 WL 1445729, at *6 (S.D.N.Y. Mar. 25, 2020) ("Plaintiff's claim regarding the number of federal lawsuits in which [defendant] is a defendant is insufficient to plead a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policymaker must have been aware."  (internal quotation marks and citations omitted)).

Accordingly, MVCC's and Oneida County's motions to dismiss as to Carpenter's claims of procedural due process, stigma plus, equal protection, substantive due process, and Section 1983 gender

25

discrimination, as against them, are granted, and those claims are dismissed.  Consequently, unless stated otherwise, the discussion below regarding Carpenter's Section 1983 claims will address only the arguments made by Dame and Broadhurst.

     *3.*    *Section 1983 Claims*

          *a.*    *Procedural Due Process*

Carpenter brings a Fourteenth Amendment procedural due process claim against all defendants based on his allegedly unlawful termination from his employment with MVCC.  (Am. Compl. ¶¶ 68-122, 158-61.) Defendants move to dismiss this claim, arguing that Carpenter "had no property interest in his position(s) and . . . [e]ven if he was entitled to any due process, he received it."  (Dkt. No. 39, Attach. 5 at 27; Dkt. No. 49, Attach. 5 at 20.)

Analysis of a procedural due process claim is composed of two prongs.  *See Narumanchi v. Bd. of Trs. of Conn. State Univ.*, 850 F.2d 70, 72 (2d Cir. 1988).  First, the court must discern "whether the plaintiff has a property or liberty interest protected by the Constitution."  *Id.* (citation omitted).  If such an interest exists, "[the] court must then consider whether the government deprived the plaintiff of that interest without due process."

*Id.* Thus, under the second step of the analysis, the court must ask "what process was due to the plaintiff, and . . . whether that constitutional minimum was provided in the case under review." *Id.* (citation omitted).

Carpenter's "constitutional claim depends on [him] having had a property right in continued employment." *Coles v. Erie County*, 629 F. App'x 41, 42 (2d Cir. 2015) (citation omitted). "In the employment context, the interest [in continued employment] is typically established by showing that under the provisions of a statute or collective bargaining agreement, the employee cannot be terminated or demoted without a hearing." *Rotundo v. Village of Yorkville*, No. 6:09-CV-1262, 2011 WL 838892, at *8 (N.D.N.Y. Mar. 4, 2011) (citing *Ciambriello v. County of Nassau*, 292 F.3d 307, 313-14 (2d Cir. 2002)).

Here, Carpenter alleges that he was a member of the Association and that he was covered by the CBA, which provided that "prior to an employee being terminated the employer is required to follow a certain set of policies, procedures and protocols so as to guarantee to all employees certain due process rights." (Am. Compl. ¶¶ 70-71.) Accordingly, Carpenter had a property interest in his employment with MVCC. *See Rotundo*, 2011 WL 838892, at *8.

27

However, it is well established "that there is no [procedural] due process violation where . . . pre-deprivation notice is provided and the deprivation at issue can be fully remedied through the grievance procedures provided for in a collective bargaining agreement." *Adams v. Suozzi*, 517 F.3d 124, 128 (2d Cir. 2008) (citations omitted).  Defendants' assert that any due process violation could have been remedied through the CBA's grievance procedures, in which Carpenter admittedly did not partake.  (Dkt. No. 39, Attach. 5 at 29; Dkt. No. 49, Attach. 5 at 21.)  The court disagrees.

Carpenter has set forth sufficient facts to maintain a procedural due process claim against Dame and Broadhurst.  Carpenter alleges that he was fired in February 2018, before Carpenter had any opportunity to be heard.  (Am. Compl. ¶¶ 68-122.)  Although, Dame attempted to remedy her apparent disregard of the CBA's provisions by holding a meeting with Carpenter at which she described the notice of termination as a "[n]otice of [c]harge," (*id.* ¶¶ 102-04), the stern and final language in the termination notice, (Dkt. No. 31, Attach. 1), makes clear that Carpenter was effectively terminated on the date of such notice.

Moreover, before the allegations against Carpenter could be

investigated, verified, or substantiated by witnesses or otherwise, Dame

instructed Broadhurst to report Carpenter's alleged NJCAA violations to the

NJCAA, and to inform them that Carpenter would be fired as a result.  (Am.

Compl. ¶¶ 60-62.)  Accepting Carpenter's allegations as true, it is difficult

to imagine that Dame and Broadhurst would have informed the NJCAA that

Carpenter would be fired if, in fact, no decision had been made.

Accordingly, although more facts might be gleaned from discovery as

to whether appropriate procedures were followed, at this early stage,

Dame's and Broadhurst's motions to dismiss Carpenter's procedural due

process claim are denied.[7]

b.   Substantive Due Process

Carpenter brings a Fourteenth Amendment substantive due process

claim against all defendants, alleging that Carpenter's alleged wrongful

termination "shock[s] the contemporary conscience."  (Am. Compl. ¶¶ 244-

50.)  Defendants argue that allegations of wrongful termination from public

_____

[7] Defendants argue that, if the assistant job and coaching job were separate positions, the availability of an Article 78 proceeding satisfies due process as to Carpenter's coaching job, for which he was not subject to the CBA.  (Dkt. No. 39, Attach. 5 at 29; Dkt. No. 49, Attach. 5 at 22.)  This argument appears to have merit.  *See Dukes v. N.Y.C. Employees' Ret. Sys.*, 361 F. Supp. 3d 358, 371 (S.D.N.Y. 2019).  However, at this juncture, the court will not conduct the fact-based inquiry necessary to make this decision, and defendants may renew this argument at the appropriate time.

employment is insufficient to maintain a substantive due process claim. (Dkt. No. 39, Attach. 5 at 30; Dkt. No. 49, Attach. 5 at 22-23.)

"The doctrine of substantive due process protects the individual against certain government actions regardless of the fairness of the procedures used to implement them," *McClary v. O'Hare*, 786 F.2d 83, 88 (2d Cir. 1986) (internal quotation marks and citations omitted), but the scope of the doctrine "is very limited," *see Doe v. U.S. Merchant Marine Acad.*, 307 F. Supp. 3d 121, 156 (E.D.N.Y. 2018).  A successful substantive due process claim requires that the plaintiff show "that the state action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."  *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 431 (2d Cir. 2009) (internal quotation marks and citations omitted).

Moreover, substantive due process is "not . . . a remedy to a public employee [if it] would not be available to a private employee subject to identical conduct by his employer." *Walter v. Queens Coll.*, 390 F. Supp. 3d 382, 391 (E.D.N.Y. 2019) (citing *McClary*, 786 F.2d at 89).  Rather, "the alleged government conduct must be 'uniquely governmental' in character and 'sufficiently severe . . . as to transcend the bounds of ordinary tort law

30

and establish a deprivation of constitutional rights.'" *Id.* (quoting *McClary*, 786 F.2d at 88-89 & n.6).

As defendants' note in their reply brief, Carpenter did not address their arguments that Carpenter's termination did not shock the conscience and that wrongful termination from public employment is insufficient to adequately allege a substantive due process claim.  (Dkt. No. 57 at 8 n.7.) Instead, Carpenter argues that defendants' willfully violated FLSA, and cites to cases that do not mention substantive due process.  (Dkt. No. 52, Attach. 2 at 18-19; Dkt. No. 55, Attach. 2 at 18-19.)

Consequently, Carpenter has not adequately alleged, or argued, that defendants' actions here were uniquely governmental, which is required to maintain a substantive due process claim in this context.  *See Walter*, 390 F. Supp. 3d at 392 (dismissing the plaintiff's substantive due process claim, which was based on alleged wrongful termination from his position as professor of a state-run college, because "the fact that the College is state-run is only a qualifier, it is not the institution's defining feature, and as a result, [the plaintiff's] allegations do not rise to the level of 'uniquely governmental' conduct").

Accordingly, Dame's and Broadhurst's motions to dismiss as to

31

Carpenter's substantive due process claim are granted and that claim is dismissed.

        *c.*    *Stigma Plus*

Carpenter brings a Fourteenth Amendment procedural due process claim pursuant to the "stigma plus" theory against MVCC, Dame, and Oneida County based on Dame's alleged statement to a parent of one of Carpenter's student-athletes that Carpenter had a serious drug problem. (Am. Compl. ¶¶ 162-80.)  Dame, the only remaining defendant as to this claim in light of the discussion above, argues that this claim should be dismissed because an Article 78 proceeding was available to Carpenter; the alleged defamation was not connected to Carpenter's termination; and the alleged defamation was not widely disseminated.  (Dkt. No. 39, Attach. 5 at 31-33.)

Defamation is an issue of state, not federal, law "and therefore provides an insufficient basis to maintain a § 1983 action."  *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004) (citation omitted).  Under limited circumstances, however, a plaintiff may seek relief under the so-called "stigma plus" doctrine.  *See McCaul v. Ardsley Union Free Sch. Dist.*, 514 F. App'x 1, 4 (2d Cir. 2013).  "Specifically, an action can be grounded in 42

U.S.C. § 1983 when that plaintiff can demonstrate a stigmatizing statement plus a deprivation of a tangible interest." *Vega v. Lantz*, 596 F.3d 77, 81 (2d Cir. 2010) (internal quotation marks and citations omitted).

"Stigmatizing statements" are those statements that "call into question [the] plaintiff's good name, reputation, honor, or integrity" or "denigrate the employee's competence as a professional and impugn the employee's professional reputation in such a fashion as to effectively put a significant roadblock in that employee's continued ability to practice his or her profession." *Segal v. City of New York*, 459 F.3d 207, 212 (2d Cir. 2006) (internal quotation marks and citation omitted). The statement "must be sufficiently public to create or threaten a stigma." *Velez v. Levy*, 401 F.3d 75, 87 (2d Cir. 2005) (citation omitted). And Carpenter must show that "the stigmatizing statements were made in the course of, or in close temporal proximity to, a discharge or significant demotion." *Donley v. Village of Yorkville*, No. 6:14-CV-1324, 2019 WL 3817054, at *8 (N.D.N.Y. Aug. 13, 2019) (citation omitted).

Dame argues that Carpenter's claim fails because an Article 78 proceeding was available to him. (Dkt. No. 39, Attach. 5 at 31.) "Article 78 name-clearing hearings are all the process due to a former municipal

employee in [Carpenter's] position." *Donley*, 2019 WL 3817054, at \*9; *see Guerra v. Jones*, 421 F. App'x 15, 19 (2d Cir. 2011) (finding that an Article 78 hearing provides the requisite post-deprivation process thereby precluding the plaintiff's stigma-plus claim).

Carpenter's only response to Dame's argument regarding the availability of an Article 78 proceeding is that the F.R.C.P. applies to his claims and not the C.P.L.R.  (Dkt. No. 52, Attach. 2 at 19-20; Dkt. No. 56, Attach. 2 at 19-20.)  This argument is rejected.  *See Duchemin v. Inc. Vill. of E. Hampton*, No. 14-CV-5976, 2015 WL 6680238, at \*10 (E.D.N.Y. Oct. 31, 2015) ("[T]here *is no* constitutional violation (and no available § 1983 action) when there is an adequate post-deprivation procedure to remedy a random, arbitrary deprivation of property or liberty.  In cases where the state actor engaged in random and unauthorized acts, an Article 78 proceeding constitutes a wholly adequate post-deprivation hearing for due process violations.").

Accordingly, Dame's motion to dismiss as to Carpenter's stigma plus claim is granted, and that claim is dismissed.

> d.   *Equal Protection*

Carpenter brings a Fourteenth Amendment equal protection claim

34

against all defendants, alleging that they "launched a pretextual discriminatory investigation against a male employee[, Carpenter,] on poor internal complaints resulting in his termination when female employees who engaged in similar or worse conduct acted with impunity." (Am. Compl. ¶¶ 220, 237-43.)  Defendants argue that Carpenter's allegations are insufficient to maintain an equal protection claim and that there are reasonable, non-discriminatory reasons for his termination.  (Dkt. No. 39, Attach. 5 at 33-34; Dkt. No. 49, Attach. 5 at 15-20, 23.)

In order to maintain an equal protection claim, a plaintiff must show that "(1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to an inference of discrimination."  *Cusher v. Mallick*, No. 1:16-CV-01273, 2020 WL 109510, at *15 (N.D.N.Y. Jan. 9, 2020) (citations omitted).  Defendants focus their analysis on whether an adverse action took place under circumstances giving rise to an inference of discrimination.

"[T]he ultimate issue in an employment discrimination case is whether the plaintiff has met [his] burden of proving that the adverse employment decision was motivated at least in part by an impermissible

reason, *i.e.*, a discriminatory reason." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015) (internal quotation marks and citation omitted).  This prong may be satisfied "by indirectly showing circumstances giving rise to an inference of discrimination."  *Id.* (citation omitted).

The pleading standard for equal protection claims based on gender discrimination is low.  Indeed, a plaintiff alleging such a claim does not even need to allege a "favorably treated, similarly situated individual[] outside of the plaintiff's protected class."  *Krause v. Kelehan*, No. 6:17-CV-1045, 2018 WL 2021484, at *12 (N.D.N.Y. Apr. 26, 2018).  Instead, the requirements of equal protection "may . . . be satisfied by allegations that the supervisor accused of discrimination made statements indicative of bias against the plaintiff's protected class."  *Id.* (citing *Conforti v. Sunbelt Rentals, Inc.*, 201 F. Supp. 3d 278, 299 (E.D.N.Y. 2016) (noting that allegations that supervisors "made comments . . . that suggested that they were biased" were "sufficient to satisfy the minimal pleading burden for discrimination claims at the motion to dismiss stage")).

Here, Carpenter's equal protection claim is based on the following allegations that, he claims, show an inference of gender discrimination against him: (1) Dame has "initiated and conducted poor investigations . . .

based on suspect internal employee administrative complaints using them as a pretext to discriminate against men in the past"; (2) a similar gender discrimination action involving Dame and MVCC allegedly discriminating against a male employee survived summary judgment in this district; (3) "[d]efendants have failed to perform investigations . . . of[,] []or terminate[,] female athletic trainers [accused of] not maintaining proper 'boundaries' with male students"; (4) Dame "has repeatedly made gender discriminatory remarks in [Carpenter's] presence"; and (5) the true reason for Carpenter's termination was "a desire on the part of the defendants to have more women coaches at MVCC."  (Am. Compl. ¶¶ 207, 209-11, 217-19, 229.)  Given the lower pleading standard described above, these allegations are sufficient to maintain an equal protection claim against Dame, if only just barely.  Accordingly, Dame's motion to dismiss as to Carpenter's equal protection claim is denied.

However, Broadhurst's motion to dismiss as to this claim is granted, and the claim against him is dismissed, because the amended complaint contains no allegations of gender-based discrimination on his part.  *See Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016) (noting that personal involvement of defendants in the alleged constitutional deprivation is a

prerequisite to a finding of liability under § 1983).

### e.    Section 1983 Gender Discrimination Claim

Carpenter brings a gender discrimination claim pursuant to 42 U.S.C.

§ 1983 against MVCC and Oneida County based on alleged *Monell* liability.

(Am. Compl. ¶¶ 251-55.)  Because this claim is brought solely against

MVCC and Oneida County, and, as explained above, Carpenter has not

adequately alleged *Monell* liability, MVCC's and Oneida County's motions

to dismiss as to this claim are granted and the claim is dismissed.

### 4.    Defamation

Carpenter brings a defamation claim pursuant to state law against

Dame, MVCC, and Oneida County.  (Am. Compl. ¶¶ 181-88.)  Specifically,

Carpenter alleges that Dame told the parents of one of his student-athletes

that their "daughter was in danger" because Carpenter "had a serious drug

problem," and that these statements were false.  (*Id.* ¶¶ 164-69.)

Defendants argue that Carpenter's defamation claim fails, because he has

not sufficiently alleged special damages and the alleged defamatory

statements do not constitute slander per se.  (Dkt. No. 39, Attach. 5 at 15-

17; Dkt. No. 50, Attach. 5 at 13-15.)

To state a claim for defamation under New York law, a plaintiff must

allege "a false statement, published without privilege or authorization to a third party, constituting fault as judged by, at a minimum, a negligence standard, . . . caus[ing] special harm or constitut[ing] defamation per se." *Jackie's Enters., Inc. v. Belleville*, 165 A.D.3d 1567, 1569-70 (3d Dep't 2018) (citations omitted).  "All that is required in federal court is a short and plain statement of the claim showing that the pleader is entitled to relief. The Court is not bound by the particularity of New York State rules of pleading."  *D'Lima v. Cuba Mem'l Hosp., Inc.*, 833 F. Supp. 2d 383, 390 (W.D.N.Y. 2011) (citations omitted).

Carpenter's defamation claim is based on allegations of slander. (Am. Compl. ¶¶ 181-88.)  Carpenter sufficiently alleges that Dame's statements that Carpenter had a serious drug issue were false[8] statements of purported fact that were not spoken with privilege.[9]  Further, although factual support is lacking in Carpenter's amended complaint as to whether he suffered special damages, it is of no consequence, because, for the reasons that follow, Dame's statements constitute slander per se.

---

[8] Carpenter alleges that he submitted to a drug test shortly after Dame's allegations, which showed no drugs in his system.  (Am. Compl. ¶¶ 167-68.)

[9] The court has previously found that no privilege applies to Carpenter's defamation claim.  *See Carpenter v. Mohawk Valley Cmty. Coll.*, No. 6:18-cv-1268, 2019 WL 3338845, at *1 (N.D.N.Y. July 25, 2019).

There are four categories of statements for which damages need not be shown: statements "(i) charging plaintiff with a serious crime; (ii) that tend to injure another in his or her trade, business or profession; (iii) that plaintiff has a loathsome disease; or (iv) imputing unchastity to a woman." *Liberman v. Gelstein*, 80 N.Y.2d 429, 435 (1992) (citations omitted).  Here, Dame's statements are slander per se, because they are statements that would injure Carpenter's profession, as Dame told the parents of one of his student-athletes that, due to his drug problem, they can no longer trust him with their daughter.  *See D'Lima*, 833 F. Supp. 2d at 390 (finding that defamatory statements that a dentist "used illegal drugs and that his impairment from the drugs was having a detrimental impact on his patients" constituted slander per se).

Finally, although there is some doubt as to whether Dame was acting in the scope of her employment as Executive Director of Human Resources when she made the defamatory statements, *see Berrio v. City of New York*, No. 15-CV-09570, 2017 WL 118024, at *8 (S.D.N.Y. Jan. 10, 2017), defendants have failed to advance any argument as to whether Carpenter's amended complaint sufficiently alleges MVCC's and Oneida County's liability pursuant to the doctrine of respondeat superior.  (*See Generally*

40

Dkt. Nos. 39, 50.)

Accordingly, defendants' motions to dismiss as to Carpenter's defamation claim are denied.

### 5. NYHRL

Carpenter brings an NYHRL claim against all defendants, making the same allegations as described in the equal protection sub-section of this Memorandum-Decision and Order.  *See supra* Part IV.B.3.d.

The analysis for equal protection claims and NYHRL claims are substantially the same.  In order to establish a prima facie case for gender discrimination under the NYHRL,[10] "a plaintiff need only establish a prima facie case of sex discrimination by demonstrating that (1) he was within the protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination."  *Menaker v. Hofstra Univ.*, 935 F.3d 20, 30 (2d Cir. 2019) (internal quotation marks, alterations, and citation omitted).

In determining whether a plaintiff's gender discrimination claim

---

[10]  Claims brought under Title VII and the NYHRL are subject to the same analytical standards. *See Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 565 n. 1 (2d Cir. 2000).

survives a motion to dismiss, the Court only considers "whether the complaint includes factual allegations sufficient to raise a right to relief above the speculative level." *Gonzalez v. Carestream Health, Inc.*, 520 F. App'x 8, 10 (2d Cir. 2013) (internal quotation marks and citation omitted). "In other words, the Court asks only whether a plaintiff has pled a prima facie case, not whether a plaintiff has established that case. Thus, the standard is simply whether the plaintiff's complaint, construed liberally, satisfies the federal pleading requirements for a claim of discrimination." *Figueroa v. RSquared NY, Inc.*, 89 F. Supp. 3d 484, 489 (E.D.N.Y. 2015) (internal quotation marks, alterations, and citation omitted).

Once a prima facie case is determined to have been established, "the burden shifts to the employer at the *summary judgment stage* to articulate some legitimate, nondiscriminatory reason for the adverse employment action." *Menaker*, 935 F.3d at 30 (internal quotation marks and citation omitted) (emphasis added).

The amended complaint satisfies the first three requirements for a prima facie case for gender discrimination under the NYHRL: Carpenter is a member of a protected class, he was qualified for the positions he held, and he suffered an adverse employment action when he was terminated

from employment with MVCC.  *See id.* (finding that the first three requirements were met with respect to the gender discrimination claim of a male tennis coach who was terminated by his university-employer); *Reynoso v. All Foods, Inc.*, 908 F. Supp. 2d 330, 342 (E.D.N.Y. 2012) (stating plaintiff's "termination clearly constitutes an adverse employment action").  Indeed, defendants do not contest any of these elements in their motions to dismiss, and, instead, argue that Carpenter's gender did not play any role in his termination.  (Dkt. No. 39, Attach. 5 at 17-22; Dkt. No. 49, Attach. 5 at 17-22; Dkt. No. 50, Attach. 5 at 15-20.)

Carpenter's allegations in support of his NYHRL claim are the same as those in support of his equal protection claim, which are noted above. (Am. Compl. ¶¶ 207, 209-11, 217-19, 229.)  Although Carpenter's alleged improper loans and failure to respect boundaries with a student athlete may be the actual, legitimate, and non-discriminatory reasons for his termination, at this juncture, Carpenter has sufficiently alleged a NYHRL claim against MVCC, Dame, and Oneida County.  *See Menaker*, 935 F.3d at 26; *Russell v. Aid to Developmentally Disabled, Inc.*, No. 12 CV 389, 2013 WL 633573, at *9 (E.D.N.Y. Feb. 20, 2013).  Defendants' argument as to the non-discriminatory rationale for Carpenter's termination is more

appropriate on summary judgment.  *See Menaker*, 935 F.3d at 30.  Further, although not argued by defendants to the contrary, the claim survives against MVCC and Oneida County as well pursuant to the "cat's paw theory."  *See id.* at 37-39.

Accordingly, in light of the lenient pleading standard for gender discrimination claims, MVCC's, Dame's, and Oneida County's motions to dismiss Carpenter's NYHRL claim are denied.

However, as noted above, the amended complaint contains no allegations of Broadhurst's involvement in any gender-based discrimination.  Carpenter did not even attempt to remedy this in his opposition brief, even when confronted with this fact in Broadhurst's motion.  Accordingly, Broadhurst's motion to dismiss Carpenter's NYHRL claim is granted, and the claim is dismissed as against him.

6.    *DPPA*

Carpenter brings a claim under the DPPA against all defendants, alleging that, pursuant to Dame's request, which was given under false pretenses, members of the MVCC Security Office ran a Department of Motor Vehicles (DMV) "check" on Carpenter's license plate, during which "certain information about [him] was ascertained and conveyed to . . .

Dame." (Am. Compl. ¶¶ 189-96.) MVCC, Dame, and Oneida County argue that this claim should be dismissed because Carpenter "does not allege the information at issue was obtained from a source regulated by that provision" and because the information was used for a "permissible use" under the statute. (Dkt. No. 39, Attach. 5 at 34-35; Dkt. No. 50, Attach. 5 at 25.) Broadhurst argues that this claim should be dismissed as against him, because there are no allegations in Carpenter's amended complaint connecting him to these allegations. (Dkt. No. 49, Attach. 5 at 23-24.)

"Under the DPPA, state DMVs, individuals, organizations, and entities may not disclose 'personal information' drawn from motor vehicle records unless permitted by statute." *Gordon v. Softech Int'l, Inc.*, 726 F.3d 42, 49 (2d Cir. 2013) (citations omitted). "Personal information" includes "an individual's photograph, social security number, driver identification number, name, address (but not the 5–digit zip code), telephone number, and medical or disability information." 18 U.S.C. § 2725(3). The DPPA "identifies fourteen exceptions—'permissible uses'—for which disclosure is allowed." *Gordon*, 726 F.3d at 49 (citing 18 U.S.C. § 2721(b)). Here, defendants argue that two permissible uses apply: "[f]or use by any

governmental agency . . . in carrying out its functions," and "[f]or use in . . . investigation in anticipation of litigation." (Dkt. No. 39, Attach. 5 at 35; Dkt. No. 50, Attach. 5 at 25 (citing 18 U.S.C. §§ 2721(b)(1), (4)).)

First, Carpenter's amended complaint is entirely devoid of any allegations as to Broadhurst's involvement in the facts underlying the DPPA claim. (*See generally* Am. Compl.) Carpenter does not dispute this, but, instead, asserts that he will be able to determine whether or not Broadhurst was involved through discovery. (Dkt. No. 55, Attach. 2 at 24.) This argument is unavailing, as "discovery is not for the purpose of finding a cause of action." *Perez v. Johnson*, No. 07 Civ. 3761, 2008 WL 2876546, at *3 (S.D.N.Y. July 23, 2008). Accordingly, Broadhurst's motion to dismiss Carpenter's DPPA claim is granted and the claim is dismissed as against him.

Similarly, Carpenter does not set forth any response to MVCC, Dame, and Oneida County's argument that the information was gathered for a permissible use. (Dkt. No. 52, Attach. 2 at 23-24; Dkt. No. 56, Attach. 2 at 23-24 .) However, defendants' argument is wholly lacking in detail and case support. (Dkt. No. 39, Attach. 5 at 34-35; Dkt. No. 50, Attach. 5 at 25.) They merely state the provision of the statute without any

interpretation or explanation as to why it applies to this case.  (*Id.*)  Further,

"[u]ses of personal information with a remote relation to litigation [are not]

exempt under [the DPPA]."  *Cross v. Connolly*, No. 17-CV-906, 2019 WL

1429262, at *2 (W.D.N.Y. Mar. 29, 2019) (citation omitted).  Rather,

"'[i]nvestigation in anticipation of litigation' is best understood to allow

background research to determine whether there is a supportable theory

for a complaint, a theory sufficient to avoid sanctions for filing a frivolous

lawsuit, or to locate witnesses for deposition or trial testimony."  *Id.* (citation

omitted).

Carpenter alleges that Dame had MVCC check Carpenter's DMV

records under false pretenses.  (Am. Compl. ¶¶ 189-96.)  At this juncture,

and based on the totality of the circumstances, including defendants'

unpersuasive argument that permissible uses apply, Carpenter's

allegations are sufficient to maintain a DPPA claim as against MVCC,

Dame, and Oneida County.  Accordingly, their motions to dismiss this claim

are denied.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that MVCC and Dame's motion to dismiss and/or for

partial summary judgment (Dkt. No. 39) is **GRANTED IN PART** and

**DENIED IN PART** as follows:

> **GRANTED** as to (1) Carpenter's substantive due process and
>
> stigma plus claims as against both defendants, and
>
> (2) Carpenter's procedural due process, equal protection, and
>
> Section 1983 gender discrimination claims as against MVCC,
>
> which claims are **DISMISSED**; and
>
> **DENIED** in all other respects; and it is further

**ORDERED** that Broadhurst's motion to dismiss and/or for partial

summary judgment (Dkt. No. 49) is **GRANTED IN PART** and **DENIED IN**

**PART** as follows:

> **GRANTED** as to Carpenter's substantive due process, equal
>
> protection, NYHRL, and DPPA claims as against Broadhurst,
>
> which claims are **DISMISSED**; and
>
> **DENIED** in all other respects; and it is further

**ORDERED** that Oneida County's motion to dismiss and/or for partial

summary judgment (Dkt. No. 50) is **GRANTED IN PART** and **DENIED IN**

**PART** as follows:

**GRANTED** as to Carpenter's NYLL, procedural due process, substantive due process, stigma plus, equal protection, and Section 1983 gender discrimination claims as against Oneida County, which claims are **DISMISSED**; and

**DENIED** in all other respects; and it is further

**ORDERED** that the following claims remain against MVCC: (1) a claim pursuant to the FLSA; (2) a claim pursuant to the NYLL; (3) a defamation claim pursuant to New York state law; (4) a claim pursuant to the NYHRL; and (5) a claim pursuant to the DPPA; and it is further

**ORDERED** that the following claims remain against Dame: (1) a claim pursuant to the FLSA; (2) a claim pursuant to the NYLL; (3) a Fourteenth Amendment procedural due process claim pursuant to 42 U.S.C. § 1983; (4) a Fourteenth Amendment equal protection claim pursuant to 42 U.S.C. § 1983; (5) a defamation claim pursuant to New York state law; (6) a claim pursuant to the NYHRL; and (7) a claim pursuant to the DPPA; and it is further

**ORDERED** that the following claims remain against Broadhurst: (1) a claim pursuant to the FLSA; (2) a claim pursuant to the NYLL; and (3) a Fourteenth Amendment procedural due process claim pursuant to 42

U.S.C. § 1983; and it is further

**ORDERED** that the following claims remain against Oneida County:
(1) a claim pursuant to the FLSA; (2) a defamation claim pursuant to New
York state law; (3) a claim pursuant to the NYHRL; and (4) a claim
pursuant to the DPPA; and it is further

**ORDERED** that defendants shall respond to the amended complaint,
(Dkt. No. 31), within the time allotted by the rules; and it is further

**ORDERED** that the parties shall contact Magistrate Judge Thérèse
Wiley Dancks to schedule further proceedings; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-
Decision and Order to the parties.

**IT IS SO ORDERED.**

April 20, 2020
Albany, New York

Gary L. Sharpe
U.S. District Judge