**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**JASON CARPENTER,**

                                **6:18-cv-1268**
                    **Plaintiff,**        **(GLS/TWD)**

            **v.**

**MOHAWK VALLEY COMMUNITY**
**COLLEGE et al.,**
                    **Defendants.**
_____

**APPEARANCES:**                    **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Ward Arcuri Law Firm            MICHAEL A. ARCURI, ESQ.
44 Oxford Road                  KEVIN J. DWYER, ESQ.
New Hartford, NY 13413

Law Office of Zachary C. Oren, Esq.    ZACHARY C. OREN, ESQ.
401 Rutger Street
Utica, NY 13501

**FOR THE DEFENDANTS:**
Ferrara Fiorenza P.C.           CHARLES C. SPAGOLI, ESQ.
5010 Campuswood Drive
East Syracuse, NY 13057

**Gary L. Sharpe**
**Senior District Judge**

<u>**MEMORANDUM-DECISION AND ORDER**</u>

## I. <u>Introduction</u>

Plaintiff Jason Carpenter commenced this action against defendants

Mohawk Valley Community College (MVCC), Oneida County, Kimberly

Evans-Dame, and Gary Broadhurst, alleging claims pursuant to the Fair

Labor Standards Act[1] (FLSA), 42 U.S.C. § 1983, the Drivers' Privacy

Protection Act[2] (DPPA), and New York State law.  (*See generally* Am.

Compl., Dkt. No. 31.)  On April 4, 2020, the court issued a Memorandum-

Decision and Order partially dismissing Carpenter's complaint.  (Dkt.

No. 60.)  Now pending is defendants' motion for summary judgment on

Carpenter's remaining claims, (Dkt. No. 111), and defendants' motion to

strike Carpenter's response to defendants' statement of material facts,

(Dkt. No. 121).  For the reasons that follow, defendants' motion for

summary judgment is granted, and motion to strike is denied.[3]

---

[1]  *See* 29 U.S.C. §§ 201-19.

[2]  *See* 18 U.S.C. §§ 2721-25.

[3]  Defendants argue that Carpenter's response to defendants'
statement of material facts should be stricken as it is "pervasively
noncompliant" with the Local Rules of Practice because Carpenter
purports to deny certain facts but "do[es] not controvert the actual factual
assertions," "improperly couple[s admissions] with extraneous self-serving
allegations and reinterpretations," "dodge[s] the factual issue[s] posed
altogether," and improperly "relies on the allegations of the [a]mended
[c]omplaint" to controvert factual allegations.  (Dkt. No. 121.)  The motion
to strike is denied, however, the court deems admitted all paragraphs to
which proper responses were not provided by Carpenter.

## II.  **Background**

### A.    **Facts**[4]

MVCC is a community college with its main campus located in Utica, New York.  (Defs.'s Statement of Material Facts (SMF) ¶ 1, Dkt. No. 111, Attach. 1.)  Evans-Dame is a former employee of MVCC, serving initially as Director of Human Resources, and then as Executive Director of Human Resources.  (*Id.* ¶ 2.)  At all relevant times, Broadhurst was the Associate Dean of Athletics and Physical Education at MVCC, and Carpenter's immediate supervisor.  (*Id.* ¶ 3.)  Oneida County is "the local sponsor of [MVCC] pursuant to Education Law § 6302."  (*Id.* ¶ 4.)

Carpenter is a former employee of MVCC, who served as the head coach of the women's basketball team, Assistant to the Associate Dean of Athletics and Physical Education, and taught courses related to strength and speed training.  (*Id.* ¶ 5.)  As Assistant to the Associate Dean, Carpenter's "major duties" were overseeing National Junior College Athletic Association (NJCAA) rules compliance and "developing and

_____

   [4]  Unless otherwise noted, the facts are not in dispute.

3

administering [MVCC]'s student-athlete academic success program." (*Id.* ¶ 36.) The parties disagree as to what degree of autonomy Carpenter maintained with respect to his role in overseeing NJCAA rules compliance. (*Id.* ¶¶ 41-43, 45; Pl.'s Statement of Material Facts (SMF) ¶¶ 41-43, 45, Dkt. No. 118, Attach. 18.) Defendants contend that Carpenter "exercised independent judgment and discretion with regard to his NJCAA compliance and eligibility duties" and "was generally expected to [undertake his duties] without first consulting with . . . Broadhurst." (Defs.'s SMF ¶¶ 43, 45.) Carpenter asserts that "any difficult questions, or any direct dealings with the NJCAA would be done by . . . Broadhurst," and that he would instruct other employees that if they wanted "an official answer" regarding NJCAA compliance issues, "they should check with . . . Broadhurst" rather than himself. (Pl.'s SMF ¶¶ 41-42.)

During his time at MVCC, Carpenter "made loans and/or payments to several student-athletes on a number of occasions" and "provided housing to other student-athletes," both of which are prohibited by the NJCAA other than in limited, inapplicable circumstances. (Defs.'s SMF ¶¶ 86-87, 91-93.)

On February 7 and 8, 2018, e-mails were anonymously sent to Broadhurst, claiming that Carpenter "was engaged in a sexual relationship"

4

with a woman on MVCC's basketball team.  (*Id.* ¶ 111.) Broadhurst

forwarded the e-mails to Evans-Dame, who then engaged in further

correspondence with the anonymous source.  (*Id.* ¶¶ 112, 115.)  The

anonymous source advised Evans-Dame about the loans and housing that

Carpenter was providing to student-athletes, and an investigation ensued.

(*Id.* ¶¶ 121-24.)

On February 14, 2018, Evans-Dame met with Carpenter and

"discussed [Carpenter's] alleged relationship with [one of his players], as

well as [his] alleged" NJCAA violations, and he "was permitted to respond

to the allegations and present his version of events."  (*Id.* ¶¶ 117-19.[5])

During the February 14, 2020 meeting, Carpenter admitted to providing

housing and transportation to his players.  (*Id.* ¶ 120.)

On February 19, 2018, Evans-Dame again met with Carpenter and

discussed his alleged NCJAA violations, and, again, Carpenter was

---

[5]  Plaintiff denies the allegations in paragraph 119 of defendants' statement of material facts, however, in doing so he states that "Evans-Dame shifted the focus of her investigation from an alleged inappropriate relationship to alleged NJCAA violations and [that he] was unprepared without proper documentation to discuss."  (Pl.'s SMF ¶ 119.)  Because Carpenter's assertion does not actually controvert the fact that he was "permitted to respond to the allegations and present his version of events," (Defs.' SMF ¶ 119), that fact is deemed admitted.

"permitted to respond to the allegations and present his version of events." (*Id.* ¶¶ 126-28.[6])  During that meeting, Carpenter "admitted making payments on behalf of student-athletes" but "claim[ed] they were merely loans to be paid back to him."  (*Id.* ¶ 129.)  Evans-Dame told Carpenter during this same meeting that "he was being placed on administrative leave until the conclusion of [MVCC's] investigation" and that "he was not to have contact with [MVCC] students during the investigation."  (*Id.* ¶¶ 131-32.)  Carpenter understood that the outcome of the investigation could result in discipline or termination.  (*Id.* ¶ 134.)[7]

---

[6] Carpenter denies the allegations in paragraph 128 of defendants' statement of material facts, however, in doing so he states that he "denies the allegation in paragraph 119."  (Pl.'s SMF ¶ 128.)  Carpenter then merely reiterates the fact that "Evans-Dame shifted the focus of her investigation from an alleged inappropriate relationship to alleged NJCAA violations and [that he] was unprepared without proper documentation to discuss."  (*Id.*)  For the same reasons noted above, *see supra* note 5, paragraph 128 is likewise deemed admitted.

[7] Carpenter disputes this factual assertion, however, in doing so he cites to his own deposition testimony, where, after being questioned as to whether "[i]n either [the February 14 or 19] meeting, was there discussion . . . that [MVCC] was looking at the matters to determine whether it was necessary to . . . discipline or terminat[e]" him, he stated that "they were performing an investigation, and at some point in the process is th[e] decision" to discipline or terminate him.  (Pl.'s SMF ¶ 134 (quoting Dkt. No. 111, Attach 21. at 224-25.)  Accordingly, paragraph 134 of defendants' statement of material facts is deemed admitted.

Subsequently, additional anonymous e-mails were sent to Evans-Dame containing evidence that Carpenter had been in contact with an MVCC student, in violation of Evans-Dame's directive for him to refrain from doing so.  (*Id.* ¶¶ 137, 138, 139.)

Evans-Dame requested another meeting with Carpenter on February 28, 2020, but Carpenter elected not to attend, and, instead, the meeting was attended by his union representatives, who were provided with written "[n]otice of the [c]harges" against him, stating that Carpenter "had committed misconduct by making loans to student-athletes and providing housing to them in violation of NJCAA regulations" and by doing so "had failed to maintain appropriate boundaries with student-athletes"; the same was provided to Carpenter by mail.  (*Id.* ¶¶ 140-41, 145-47.[8])

Carpenter was terminated "effective February 28, 2018."  (*Id.* ¶ 148.[9])

---

[8] Carpenter denies the allegations in paragraph 141 of defendants' statement of material facts, however, in doing so does not actually dispute the factual assertion.  Instead he accused Evans-Dame of "carefully craft[ing] a charge that would be grievance proof."  (Pl.'s SMF ¶ 141.) Accordingly, paragraph 141 is deemed admitted.

[9] Carpenter denies the allegations in paragraph 148 of defendants' statement of material facts, however, in doing so he states "that [paragraph 148] is a mischaracterization and that he was terminated on February 28, 2018," (Pl.'s SMF ¶ 148), the same date alleged by defendants.  Accordingly, this fact is deemed admitted.

After Carpenter's termination, he elected "to exercise his [rights] under the collective bargaining agreement between [MVCC] and [his] union" and met with Evans-Dame on March 13, 2018, along with his union representative. (*Id.* ¶¶ 149-50.)  During the March 13, 2018 meeting, Carpenter "denied having contact with . . . any [MVCC] student since February 19, 2018."  (*Id.* ¶ 152.)  Subsequent to this meeting, Carpenter "filed a grievance under the collective bargaining agreement grievance procedure to challenge his termination," which "was denied by [MVCC] and no request to arbitrate the grievance was ever filed under the collective bargaining agreement."  (*Id.* ¶ 158.[10])

On March 26, 2018, Evans-Dame received an anonymous e-mail including a picture of an MVCC student's car parked next to Carpenter's vehicle at his apartment complex.  (*Id.* ¶ 159.)  In order to confirm that the vehicle depicted was Carpenter's, Evans-Dame requested that MVCC's

---

[10]   Carpenter disputes the factual assertion in this paragraph, however, in doing so he cites to the fact that he "was aware that a grievance was filed on his behalf by [his u]nion, but was never updated by the [u]nion as to whether a final determination was made and/or an appeal was filed."  (Pl.'s SMF ¶ 158.)  Because Carpenter's alleged unawareness of the status of his union's action does not actually controvert the factual assertion in paragraph 158 of defendants' statement of material facts, this fact is deemed admitted.

Public Safety Office check its records concerning the vehicle.  (*Id.* ¶ 162.)
The MVCC Public Safety Office also accessed Carpenter's DMV records,
although "the information pertaining to [Carpenter] that appeared in the
DMV records" was information already possessed by MVCC.  (*Id.* ¶¶ 166-
68.[11])

At some point, Jim Dever, Carpenter's then-father-in-law, contacted
Evans-Dame and stated that "he was concerned for his daughter's and
grandchildren's safety" and that "he and other[s] . . . had observed
[Carpenter] to be frequently drunk, and that when [Carpenter] mixed
alcohol with [prescription] medication . . . [he] became hostile and had
threatened and harmed his wife and children."  (*Id.* ¶¶ 169-71.)  After the
conversation with Dever, Evans-Dame spoke with the mother of the
student that Carpenter was allegedly in a relationship with.  (*Id.* ¶ 175.)
Defendants assert that Evans-Dame merely relayed the "alleg[ations]"
made by Dever.  (*Id.* ¶ 176.)  Carpenter alleges that Evans-Dame stated
that Carpenter "was on drugs and was experiencing mental challenges"

---

[11]  Carpenter disputes this factual assertion, however, his response
discusses the scope of a release Carpenter executed as part of his
employment and in no way controverts the fact asserted.  (Pl.'s SMF ¶
167.)  Accordingly the fact is deemed admitted.

and that she was "extremely concerned" for the student.  (Pl.'s SMF ¶ 176.)

B.   **Procedural History**

Carpenter commenced this action in New York State Supreme Court in Oneida County.  (Compl., Dkt. No. 2.)  Defendants removed the action to this court on the basis of federal question and supplemental jurisdiction, (Dkt. No. 1), and then moved to dismiss and for partial summary judgment, (Dkt. No. 11).  In response, Carpenter cross-moved for leave to amend. (Dkt. No. 19.)  The court denied defendants' motion and granted Carpenter's cross-motion for leave to amend.  (Dkt. No. 22.)

Carpenter then filed his amended complaint, in which he alleged, sixteen causes of action. (Am. Compl., Dkt. No. 31.)  Defendants again moved to dismiss and for partial summary judgment, (Dkt. Nos. 39, 49, 50), and the court granted in part and denied in part the motion, leaving the following claims remaining: claims for failure to pay overtime, in violation of the FLSA against all defendants, and in violation of New York Labor Law (NYLL) against MVCC, Evans-Dame, and Broadhurst; a Fourteenth Amendment procedural due process claim, brought pursuant to 42 U.S.C. § 1983, against Evans-Dame and Broadhurst; a Fourteenth Amendment equal protection claim based on gender discrimination, brought pursuant to

42 U.S.C. § 1983, against Evans-Dame; a claim for gender discrimination in violation of New York Human Rights Law (NYHRL) against MVCC, Evans-Dame, and Oneida County; a slander claim against MVCC, Evans-Dame, and Oneida County; and, a claim pursuant to the DPPA against MVCC, Evans-Dame, and Onieda County, (Dkt. No. 60 at 49-50). Defendants now move for summary judgment on the remaining claims, (Dkt. No. 111), and move to strike Carpenter's response to their statement of material facts, (Dkt. No. 121).

### III.  <u>Standard of Review</u>

The standard of review pursuant to Fed. R. Civ. P. 56 is well established and will not be repeated here.  For a full discussion of the standard, the court refers the parties to its decision in *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v. Sprague*, 489 F. App'x 500 (2d Cir. 2012).

11

## IV.  **Discussion**

### A.   **Overtime**

Regarding Carpenter's claims for failure to pay overtime, in violation of the FLSA against all defendants, and in violation of NYLL against MVCC, Evans-Dame, and Broadhurst, defendants seek summary judgment on the grounds that Carpenter is exempt from overtime pay, and, alternatively, that he has not met his burden of providing evidence demonstrating what amount of allegedly unpaid overtime, if any, to which he is entitled.  (Dkt. No. 111, Attach. 14 at 9-19.)  Carpenter counters that there are disputed issues of fact with respect to whether he is exempt, and that he has met his minimal burden of establishing the hours he is entitled to.  (Dkt. No. 118, Attach. 17 at 2-13.)  The court agrees with Carpenter.

The FLSA requires employers to pay certain employees overtime. *See* 29 U.S.C. §§ 203, 207, 213.  "Certain employees are exempt from the FLSA's overtime requirements, however, including those employed in . . . 'a bona fide . . . administrative[] or professional capacity.'" *Paganas v. Total Maint. Sol., LLC*, 726 F. App'x 851, 853 (2d Cir. 2018) (quoting 29 U.S.C. § 213(a)(1)).  Additionally, the "combination exemption," applies to employees "whose primary duty involves a combination of exempt

12

administrative and exempt executive work . . . despite the fact that their duties fit neatly within neither the executive nor the administrative exemption."  *Indergit v. Rite Aid Corp.*, 293 F.R.D. 632, 638 (S.D.N.Y. 2013).

"The term employee employed in a bona fide professional capacity" includes "any employee with a primary duty of teaching, tutoring, instructing or lecturing in the activity of imparting knowledge and who is employed and engaged in this activity as a teacher in an educational establishment by which the employee is employed."  29 C.F.R. § 541.303(a) (internal quotation marks omitted).  Exempt teachers include "faculty members who are engaged as teachers but also spend a considerable amount of their time in extracurricular activities such as coaching athletic teams."  29 C.F.R. § 541.303(b).  An opinion letter authored by the Acting Administrator of the Wage and Hour Division of the United States Department of Labor specifies that "coaches whose primary duty is teaching qualify for the exemption whether or not they hold a teaching certificate or an academic degree" but "[c]oaches whose primary duties are not related to teaching—for example, performing general clerical or administrative tasks for the school unrelated to teaching, including the

recruitment of students to play sports, or performing manual labor—do not qualify for the teacher exemption." U.S. Dept. of Labor, Opinion Letter of the Acting Administrator, Wage and Hour Division (2018), 2018 WL 405227.

The term "employee employed in a bona fide administrative capacity" includes employees "[w]hose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers," who "exercise[s] . . . discretion and independent judgment with respect to matters of significance," and are compensated "at a rate of not less than $684 per week." 29 C.F.R. § 541.200(a).

Where an employee is engaged in "a mixture of exempt and nonexempt job duties, which can result from an employee working an exempt . . . job along with a nonexempt second job," the employee "must perform exempt work as his . . . 'primary duty.'" Daniel B. Abrahams et al., Fair Labor Standards Handbook for States, Local Governments & Schools ¶ 521 (Susan Prince ed., 2022). "The term 'primary duty' means 'the principal, main, major or most important duty that the employee performs.'" *Sydney v. Time Warner Ent.-Advance/Newhouse P'ship*, 751 F. App'x 90,

14

92 (2d Cir. 2018) (quoting 29 C.F.R. § 541.700(a)).  "Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole."  *Id.* (quoting 29 C.F.R. § 541.700(a)).  In making this determination:

> [C]ourts consider the following non-exhaustive list of factors: [1] the relative importance of the exempt duties as compared with other types of duties; [2] the amount of time spent performing exempt work; [3] the employee's relative freedom from direct supervision; and [4] the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee."

*Id.* (quoting 29 C.F.R. § 541.700(a)).

"The question of whether [an FLSA] exemption applies in particular circumstances is a mixed question of law and fact[,] . . . how an employee spends h[is] working time is a question of fact and . . . whether an employee's primary duty exclude[s] h[im] . . . is a question of law."  *Isett v. Aetna Life Ins. Co.*, 947 F.3d 122, 129-30 (2d Cir. 2020).  "[T]o survive summary judgment, [a plaintiff] need only show that *some* amount of uncompensated work was performed."  *Perry v. City of New York*, No. 13-CV-1015, 2018 WL 1474401, at *5 (S.D.N.Y. Mar. 26, 2018) (emphasis in original)).

The NYLL "mandates overtime pay and applies the same exemptions as the FLSA." *Ramos v. Baldor Specialty Foods. Inc.*, 687 F.3d 554, 556 n.1 (2d. Cir. 2012); *see Romero v. H.B. Auto. Grp., Inc.*, No. 11 Civ. 386, 2012 WL 1514810, at \*7 (S.D.N.Y. 2012) (finding that "if [p]laintiff is subject to the FLSA's exemptions, []he is also exempt from the NYLL's protections").

Assuming, without deciding, that defendants have met their burden by demonstrating that the multiple duties Carpenter performed at MVCC, including NJCAA rules compliance, "would each qualify for exemption under the FLSA if considered separately" and, thus, considering his duties in conjuncture would render him "overtime-exempt overall" under the "'combined' exemption," (Dkt. No. 111, Attach. 14 at 14-15), Carpenter has demonstrated that facts remain in dispute such that summary judgment must be denied.  Specifically, facts remain in dispute regarding whether Carpenter's NJCAA rules compliance duty qualifies him for the FLSA administrative exemption.  Defendants point to evidence in the record indicating that Carpenter maintained autonomy when making NJCAA rule compliance determinations.  (*See, e.g.*, Dkt. No. 111, Attach. 3 ¶ 6 (stating, in Broadhurst's affidavit, that Carpenter "exercised independent judgment

and discretion with regard to his NJCAA compliance . . . duties"); Dkt. 111,

Attach. 8 ¶ 9 (expressing, in the affidavit of MVCC men's baseball coach,

that Carpenter did not rely on his supervisor when deciding NJCAA

compliance issues that the coach presented to him).)  But Carpenter points

to additional evidence in the record to the contrary, noting that, in carrying

out his NJCAA compliance duties, he would answer "run of the mill and

easy questions," but would defer authority over "difficult" questions to his

supervisor, who had "final authority on any decisions or opinions [regarding

NJCAA compliance] rendered."  (Dkt. No. 118, Attach. 1  ¶ 15; *see* Dkt.

No. 111, Attach. 23 at 44-46 (stating, in Broadhurst's deposition, that "[a]t

any time there [was] some uncertainty about a specific [NJCAA

compliance] situation" Carpenter would "discuss that with" him).)

Accordingly, there are disputed facts regarding whether Carpenter's duty of

NJCAA rules compliance would render him exempt under the FLSA.  *See*

29 C.F.R. § 541.200(a) (requiring an employee to "exercise . . . discretion

and independent judgment with respect to matters of significance" for the

administrative exemption to apply); *see also Indergit*, 293 F.R.D. at 638

(noting that the "combination exemption" only applies to employees "whose

primary duty involves a combination of exempt . . . work").

17

Additionally, defendants' argument that Carpenter "admittedly has no records of the [allegedly unpaid overtime] hours he worked" and, instead, relies on "unreliable guesses," (Dkt. No. 111, Attach. 14 at 19) is unpersuasive.  *See Perry*, 2018 WL 1474401, at *5 ("[T]o survive summary judgment, [a plaintiff] need only show that some amount of uncompensated work was performed."); *see also Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011) (finding that a plaintiff's burden to show the "amount and extent of the uncompensated work . . . is not high" and he may meet this burden "through estimates based on his own recollection" (citations omitted)).  Accordingly, defendants' motion for summary judgment is denied with respect to Carpenter's FLSA and NYLL claims.

## B.   **Procedural Due Process**

Regarding Carpenter's procedural due process claim against Evans-Dame and Broadhurst, defendants argue that they are entitled to summary judgment because "Carpenter was afforded . . . pre-termination notice and opportunity to be heard" as well "post-termination procedures which have been recognized to lessen the pre-termination due process requirements."  (Dkt. No. 111, Attach. 14 at 19.)  Carpenter counters that the procedures of the applicable collective bargaining agreement were not

18

followed.  (Dkt. No. 118, Attach. 17 at 14-19.)

Analysis of a procedural due process claim is two-pronged.  *See Narumanchi v. Bd. of Trs. of Conn. State Univ.*, 850 F.2d 70, 72 (2d Cir. 1988).  First, the court must discern "whether the plaintiff has a property or liberty interest protected by the Constitution."  *Id.* (citation omitted).  If such an interest exists, "[the] court must then consider whether the government deprived the plaintiff of that interest without due process."  *Id.*

A "public employee who c[an] not be fired except for 'cause' . . . enjoy[s] a protected property interest in his continued employment." *DiCesare v. Town of Stonington*, 823 F. App'x 19, 22 (2d Cir. 2020) (citing *Gilbert v. Homar*, 520 U.S. 924, 928-29 (1997)).  A tenured public employee is "entitled to oral or written [pre-termination] notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story."  *Id.* at 23 (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985)).  Additionally, the due process requirement is satisfied when an employer "provides notice and a limited opportunity to be heard prior to termination, so long as a full adversarial hearing is provided afterwards."  *Id.* (citation omitted).

Defendants do not contest the property right asserted by Carpenter,

19

instead, the dispute lies with respect to whether Carpenter was afforded adequate process in connection with his termination.  (Dkt. No. 111, Attach. 14 at 22; Dkt. No. 118, Attach. 17 at 14-19.)  Here, defendants provided sufficient process to Carpenter.  In both the February 14 and 19, 2018 meetings with Evans-Dame, prior to Carpenter's termination, he was provided with notice and the opportunity to be heard.  (Defs.'s SMF ¶¶ 117-20, 126-29.)  Additionally, Carpenter's union representatives were provided with written notice of the charges against Carpenter at the February 28, 2018 meeting, and Carpenter, who elected not to attend the meeting, received the same written notice by mail.  (*Id.* ¶¶ 145-47.)  Finally, after Carpenter was terminated, he was afforded another opportunity to be heard in the March 13, 2018 meeting with Evans-Dame, and subsequent to this meeting, Carpenter engaged in his union's collective bargaining agreement grievance procedure to challenge his termination, and elected not to pursue arbitration.  (*Id.* ¶¶ 149-50, 158.)  Accordingly, defendants have satisfied their due process requirements.  *See Faghri v. Univ. of Conn.*, 621 F.3d 92, 100 (2d Cir. 2010) (granting summary judgment on procedural due process claim where plaintiff was "summoned . . . to a face-to-face meeting and told . . . the [defendant] university's reason[ing]

for his demotion" and was given "the opportunity in that meeting and immediately afterward to respond"); *see also Zeyer v. Bd. of Educ.*, 98 F. Supp. 3d 425, 435 (D. Conn. 2015) ("In the case of an employee with access to grievance procedures under a [collective bargaining agreement], generally '[t]here is no due process violation where . . . pre-deprivation notice is provided and the deprivation at issue can be fully remedied through the grievance procedures provided for in a collective bargaining agreement.'" (quoting *Adams v. Suozzi*, 517 F.3d 124, 128 (2d Cir. 2008)). Carpenter's argument that the procedures of his collective bargaining agreement were not followed, (Dkt. No. 118, Attach. 17 at 14-19), even if true, is unpersuasive.  *See Murphy v. Bd. of Educ. of Oceanside Union Free Sch. Dist.*, No. 03-CV-4113, 2005 WL 2305009, at *5 (E.D.N.Y. Sept. 20, 2005) (finding no procedural due process violation where plaintiff alleged that defendant "fail[ed] to comply with the procedures outlined in" his collective bargaining agreement, because, while such allegations may give rise to a "garden variety breach of contract claim," they "do not make out a claim of constitutional dimensions").  Accordingly, summary judgment is granted with respect to Carpenter's due process claim.

## C.   DPPA

Regarding Carpenter's DPPA claim against MVCC, Evans-Dame, and Oneida County, defendants argue that they are entitled to summary judgment because Carpenter gave written "express[] permi[ssion]" to MVCC "to review his motor vehicle record" and because MVCC "did not obtain any personal information concerning [Carpenter] from the Department of Motor Vehicles that [it] did not already possess." (Dkt. No. 111, Attach. 14 at 24.) Carpenter counters that he "under no circumstances understood [his agreement with MVCC] to allow MVCC personnel to review his motor vehicle records and search [his] personal information . . . for totaly unrelated purposes." (Dkt. No. 118, Attach. 17 at 19-20.)

"Under the DPPA, state DMVs, individuals, organizations, and entities may not disclose 'personal information' drawn from motor vehicle records unless permitted by statute." *Gordon v. Softech Int'l, Inc.*, 726 F.3d 42, 49 (2d Cir. 2013) (citations omitted). "Personal information" includes "an individual's photograph, social security number, driver identification number, name, address (but not the 5–digit zip code), telephone number, and medical or disability information." 18 U.S.C. § 2725(3). However, no violation occurs where a defendant obtains

records from the DMV that include plaintiff's "personal information" if the defendant already possessed this information.  *See Camara v. Metro-N. R. Co.*, 596 F. Supp. 2d 517, 523, 525 (D. Conn. 2009).

Here, because it is undisputed that MVCC "already had all of the information pertaining to [Carpenter] that appeared in the DMV records" they obtained. (Defs.'s SMF ¶ 167), there can be no violation of the DPPA. *See Camara*, 596 F. Supp. 2d at 523, 525 (D. Conn. 2009).

**D.   <u>Gender Discrimination</u>**

Regarding Carpenter's equal protection gender discrimination claim against Evans-Dame, and NYHSRL gender discrimination claim against MVCC, Evans-Dame, and Oneida County, among other arguments, defendants assert that Carpenter "advances no evidence upon which a reasonable jury could conclude his termination was . . . due to [his] gender."  (Dkt. No. 111, Attach. 14 at 25.)  Carpenter counters that Evans-Dame's Facebook activity indicates that she "dislikes men in position's [sic.] of power," "has been sued for sexist discriminatory investigations resulting in . . . terminations in the past," was aware that a female employee allegedly maintained "inappropriate boundaries with male students" but never investigated her, made "discriminatory remarks to"

23

Carpenter, specifically that "as a man in college athletics he was in the same ball park as, and thus would be familiar with Larry Nassar, a convicted child molester," violated his collective bargaining agreement, and replaced him with a woman.  (Dkt. No. 118, Attach. 17 at 21-25 (internal quotation marks omitted).)

Equal protection and NYSHRL employment discrimination claims are analyzed under the three-step *McDonnell Douglas* burden shifting analysis. *See Flaherty v. Massapequa Pub. Sch.*, 752 F. Supp. 2d 286, 295 (E.D.N.Y. 2010) (citing *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010)*; see also Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  In the first step of the *McDonnell Douglas* burden shifting test, the "plaintiff must show that: '(1) []he is a member of a protected class; (2) []he was qualified for the position []he held; (3) []he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to an inference of discrimination.'"  *Comerford v. Village of North Syracuse*, No. 5:18-cv-01143, 2021 WL 950974, at *18 (N.D.N.Y. Mar. 12, 2021) (quoting *Ruiz v. City of Rockland*, 609 F.3d 486, 491-92 (2d Cir. 2010)).  "The fourth factor of this test may be satisfied through direct evidence of intent to

discriminate, or by indirectly showing circumstances giving rise to an inference of discrimination." *Id.* (internal quotation marks and citations omitted).

Here, no reasonable jury could conclude that Carpenter's termination "occurred under circumstances giving rise to an inference of [gender] discrimination." *Flaherty*, 752 F. Supp. 2d at 295 (citation omitted). Regarding Evans-Dame's Facebook activity that allegedly indicates gender discrimination, Carpenter points to only one instance where Evans-Dame commented "[s]o true" on an article entitled: "Barrack Obama: Women Ruling All Nations Would Improve 'Everything.'" (Dkt. No. 111, Attach. 22 at 89-90.) With respect to his argument that Evans-Dame has "been sued for sexist discriminatory investigations" before, Carpenter cites to a case which never reached a merits-based conclusion. (Dkt. No. 118, Attach. 17 at 21 (citing *Musante v. Mohawk Vallley Cmty. Coll.*, 270 F. Supp. 3d 564 (N.D.N.Y. 2017)). In support of his argument that a female employee who allegedly maintained "inappropriate boundaries with male students" and was not investigated, Carpenter cites his own deposition testimony wherein he stated that the only proof he had of such a relationship was "rumors," he did not "know if the [rumors] were true or not," and could not say whether

Evans-Dame was aware of the allegedly inappropriate relationship.  (Dkt. No. 111, Attach. 21 at 59, 61.)  Regarding the alleged "discriminatory remarks" made to Carpenter by Evans-Dame, Carpenter testified at his deposition that "I guess it would be hard to specifically say it was necessarily directed at" him but that "she made a comment about [him] being familiar with Larry Nassar" which "in some way assum[ed] that [he] had some correlation with [a] convicted child molester[]" and "that [he had the] capability to be in that same ballpark" which she assumed, because of his "status as a man."  (*Id.* at 55.)  Additionally, while Carpenter argues that Evans-Dame violated his rights under the collective bargaining agreement, he provides no evidence that she did so because of his gender, and only contends that it could be inferred based on the "totality of the circumstances."  (Dkt. No. 118, Attach. 17 at 24.)  Assuming, without deciding, that the aforementioned evidence is admissible, no reasonable jury could construe these instances as giving rise to an inference of discrimination.  *See Potash v. Florida Union Free Sch. Dist.*, 972 F. Supp. 2d 557, 577 (S.D.N.Y. 2013) (noting that "a plaintiff must provide more than conclusory allegations . . . . [and] must offer some hard evidence showing that [his] version of the events is not wholly fanciful" to avoid

summary judgment in an employment discrimination case (quoting

*Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008)) (internal quotation

marks and other citation omitted).  The only support for Carpenter's equal

protection claim that could indicate discrimination, was that he was

replaced by a woman, (Dkt. No. 111, Attach 14. at 35), however, being

replaced by a woman, alone, cannot support a prima facie case for gender

discrimination.  *See Sutherland v. N.Y. State Dept. of Law*, No. 99-9086,

2000 WL 730413, at *2 (2d Cir. 2000) (ADA case); *see also Floyd v.*

*N.Y.C. Dept. of Educ.*, No. 10 Civ 8951, 2014 WL 171156, at *8 (S.D.N.Y.

Jan. 13, 2014) (noting that ADA and equal protection claims are analyzed

under the same standard) (collecting cases).  Accordingly, defendants'

motion is granted with respect to Carpenter's gender discrimination claims.

**E.**   **Slander**

Regarding Carpenter's slander claim against MVCC, Evans-Dame,

and Oneida County, defendants argue that they are entitled to summary

judgment because the comments at issue are non-actionable opinion.

(Dkt. No. 111, Attach. 14 at 33-34.)  Additionally, they contend that

Evans-Dame was not reckless, and that Carpenter "has not alleged or

proven the loss of anything of economic or pecuniary value as a result of

27

the alleged slander." *(Id.)*  Carpenter counters that Evans-Dame's comments conveyed alleged facts about him, rather than opinion, were false, damaged his professional reputation, and that she was "negligent and reckless" by relying on his "soon to be" ex-wife's father as the source of the information contained in her statement.  (Dkt. No. 118, Attach. 17 at 29-32.)

To state a claim for defamation under New York law, a plaintiff must allege "a false statement, published without privilege or authorization to a third party, constituting fault as judged by, at a minimum, a negligence standard, . . . caus[ing] special harm or constitut[ing] defamation per se." *Jackie's Enters., Inc. v. Belleville*, 165 A.D.3d 1567, 1569-70 (3d Dep't 2018) (citations omitted).  There are four categories of statements for which damages need not be shown: statements "(i) charging plaintiff with a serious crime; (ii) that tend to injure another in his or her trade, business or profession; (iii) that plaintiff has a loathsome disease; or (iv) imputing unchastity to a woman."  *Liberman v. Gelstein*, 80 N.Y.2d 429, 435 (1992) (citations omitted).

Here, an issue of fact exists, which precludes summary judgment. While defendants argue that the record indicates that Evans-Dame's

28

statement to Locker was simply informing her of an allegation made

against Carpenter,[12] (Defs.'s SMF ¶ 176), Carpenter points to evidence to

the contrary, indicating that Evans-Dane told Locker that Carpenter was

"on drugs and . . . was experiencing some mental challenges," with Locker

describing the Evans-Dame's comments to her as "annihilating the

character of" Carpenter.  (Pl.'s SMF ¶ 176; Dkt. No. 118, Attach. 2 at 30-

31.)  Accordingly, based on these disputed facts it cannot be said that

Evans-Dame's statement was opinion, or whether Carpenter was required

to allege economic or pecuniary damages.  *See D'Lima v. Cuba Mem'l*

*Hosp., Inc.*, 833 F. Supp. 2d 383, 390 (W.D.N.Y. 2011) (finding statements

that a dentist "used illegal drugs and that his impairment from the drugs

was having a detrimental impact on his patients" constituted slander per

se); *see also* (Dkt. No. 60 at 39 (noting that "[Evans-]Dame's statements

[as alleged by Carpenter] constitute slander per se.")).  Finally, while

defendants argue that summary judgment must be granted because

_____

> [12] Evans-Dame testified at her deposition, regarding her statement to Locker, that she "said that some allegations had come to [her] attention and [she] thought it best for the safety of [Locker's] daughter that [Locker] should be aware, and [she] stated that it was alleged that when [Carpenter] mixes a prescribed medication . . . with alcohol, that it's alleged that he becomes violent."  (Dkt. No. 111, Attach. 22 at 133.)

Evans-Dame "was not reckless," they provide no record cite in support of

this assertion, nor do they provide case law supporting the proposition that

recklessness is required, (Dkt. No. 111, Attach. 14 at 34); *see Jackie's*

*Enters.*, 165 A.D.3d at 1569-70 ("To state a claim for defamation under

New York law, a plaintiff must allege . . . at a minimum, . . . negligence." ).

For the aforementioned reasons, defendants motion for summary judgment

is denied with respect to Carpenter's slander claim.

## V.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that defendants' motion to strike (Dkt. No. 121) is

**DENIED**; and it is further

**ORDERED** that defendants' motion for summary judgement (Dkt.

No. 111) is **GRANTED IN PART and DENIED IN PART** as follows:

> **GRANTED** as to the following claims, which are **DISMISSED**,
>
> Carpenter's DPPA claim against MVCC, Evans-Dame, and
>
> Onieda County; due process claim against Evans-Dame and
>
> Broadhurst; equal protection against Evans-Dame, and NYHRL
>
> claim against MVCC, Evans-Dame, and Oneida County; and
>
> **DENIED** as to Carpenter's FLSA claim against all defendants;

NYLL claim against MVCC, Evans-Dame, and Broadhurst; and

slander claim against MVCC, Evans-Dame, and Oneida

County; and it is further

**ORDERED** that this case is deemed trial ready and a scheduling

order will be issued in due course; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-

Decision and Order to the parties.

**IT IS SO ORDERED.**

September 27, 2022
Albany, New York

Gary L. Sharpe
U.S. District Judge